IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

```
MICHAEL RAY PHILLIPS,              )
                                   )
            Plaintiff,             )
                                   )
v.                                 )  No. CIV-07-77-FHS
                                   )
NORTHEAST OKLAHOMA ELECTRIC        )
INC.; NORTHEAST RURAL SERVICES     )
a/k/a Royal Electric Corporation   )
and Rural Electric Cooperative;    )
EXPRESS PERSONNEL SERVICES;        )
JOHN and JANE DOES NOS. 1-10;      )
                                   )
            Defendants.            )
```

**OPINION AND ORDER**

Plaintiff, Michael Ray Phillips ("Phillips"), brings this action against Northeast Oklahoma Electric Inc. ("NEOEC") and its wholly owned subsidiary, Northeast Rural Service ("NERS"), a/k/a Royal Electric Corporation and Rural Electric Cooperative, for alleged violations arising out of his work on NERS's right-of-way maintenance crews. Specifically, Phillips asserts claims against NEOEC and NERS for (1) racial harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) intentional infliction of severe emotional distress, (3) negligent hiring, retention and supervision, and (4) wrongful discharge in violation of Oklahoma public policy.[1]  NEOEC and NERS

---

[1] Phillips has also sued Corey Gregory ("Gregory") and Express Personnel Services ("Express").  Gregory was Phillips' supervisor during the course of his work with NERS.  Express is the temporary staffing company which employed Phillips and placed him with NERS.  All claims against Gregory have been dismissed by virtue of orders entered on June 29, 2007 (Document #46) and August 27, 2007 (Document #84).  As reflected in their Joint Notice of Settlement (Document #141), Plaintiff and Express

1

have moved the court for the entry of summary judgment in their favor.  In support of their motion, NEOEC and NERS argue (1) Plaintiff's Title VII claim is barred by the doctrine of judicial estoppel and (2) Plaintiff's state law claims are barred by the applicable statute of limitations.[2]  For the reasons stated below, the motion for summary judgment is denied.

**Factual Background**

The facts necessary for the resolution of the legal arguments presented by NEOEC and NERS on summary judgment are not in dispute.  Plaintiff, an African-American, began his employment with Express on May 6, 2002, and was immediately assigned to NERS as a temporary laborer working on right-of-way maintenance crews.  Plaintiff last performed work for NERS on February 11, 2004.  Plaintiff contends NERS released him from his assignment on February 13, 2004, and that Express terminated his employment that same day.

With respect to his Title VII claim, Plaintiff contends that

---

apparently reached a settlement during the course of a settlement conference before Magistrate Judge Kimberly West on September 27, 2007.

[2] NEOEC and NERS also contend Plaintiff's retaliatory discharge claim under 85 O.S. § 5 is not viable and that any claim for negligent bodily injury is barred by the exclusive remedy provisions of the Oklahoma Worker's Compensation Act.  In his response to the summary judgment motion, Plaintiff informs the Court that these arguments are moot.  Plaintiff states he has settled his retaliatory discharge claim brought against Express - no such claim is brought against NEOEC and NERS.  Plaintiff also asserts that he has not filed a claim for negligent bodily injury.  Consequently, the Court finds these additional arguments in support of summary judgment to be moot as Plaintiff does not present claims against NEOEC and NERS for either retaliatory discharge under 85 O.S. § 5 or negligent bodily injury.

throughout his work assignment with NERS he was subjected to racially discriminatory treatment. He contends he was terminated from his assignment with NERS on account of his race and that the working conditions at NERS amounted to a racially hostile work environment. As examples of racially discriminatory conduct, Plaintiff alleges he was forced to ride in the back of NERS vehicles, was required to use old and unsafe work equipment, was required to endure frequent "nigger" comments from Caucasian co-workers, and was physically assaulted on May 21, 2003, by Gregory when the bucket of a bucket truck Gregory was operating came down on Plaintiff's hard-hat covered head (the "bucket truck incident"). Plaintiff also contends NERS's actions in the workplace constituted intentional infliction of severe emotional distress, negligent hiring, retention, and supervision of an employee, and a violation of Oklahoma public policy.

Plaintiff has been unemployed since his termination and claims to be physically unable to work due to two on-the-job injuries sustained while working for NERS. The first injury was sustained as a result of the May 21, 2003, "bucket truck incident." The second injury was sustained on or about February 11, 2004, when Plaintiff's eye was scratched by a piece of wood he was feeding into NERS's wood chipper. Plaintiff filed two worker's compensation claims for these injuries against Express, Plaintiff's principal employer, and NERS, Plaintiff's immediate employer. NERS was dismissed without prejudice on both claims by the Oklahoma Worker's Compensation Court as Express assumed liability as the principal employer.

The litigation history of the instant action begins in state court. On May 20, 2005, Plaintiff filed a *pro se* petition entitled "Statement of Claim" in the District Court of Muskogee County,

3

Oklahoma. Royal Electric Corporation was the named defendant. Plaintiff alleged that while he was working in the field on May 21, 2003, he sustained injuries when Gregory "dropped the bucket truck" on his head. Plaintiff also alleged he was fired on February 13, 2004, in anticipation of his filing a worker's compensation claim and that he was "subjected to unsubstantiated violations of [his] civil rights." On September 29, 2005, Plaintiff's attorney, Charles Henry ("Henry"), filed an Amended Petition in the Muskogee County District Court correctly naming NEOEC and NERS in place of Royal Electric Corporation, and adding Express and Gregory as defendants. The Amended Petition contained the following claims: (1) negligent hiring, retention, and supervision, (2) assault and battery, (3) intentional infliction of severe emotional distress, (4) retaliatory discharge in violation of 85 O.S. § 5, and (5) racially motivated discharge in violation of Oklahoma public policy.

On November 10, 2005, Express and NEOEC removed the Muskogee County District Court case to the United States District Court for the Eastern District of Oklahoma and it was assigned Case No. CIV-05-451-WH. As grounds for removal, it was argued that Plaintiff's Amended Petition asserted a claim for employment discrimination arising under Title VII; consequently, federal court jurisdiction was proper under 28 U.S.C. § 1331. On November 16, 2005, Plaintiff filed a motion to remand the case back to state court on the basis that the employment discrimination claim was brought under Oklahoma statutory law, and not under Title VII. In an amended motion to remand filed on December 13, 2005, Plaintiff changed the source of the employment discrimination claim from Oklahoma statutory law to Oklahoma common law, but reiterated his position that no federal claims were being asserted. The rationale for not asserting a federal claim was the fact that "Plaintiff's counsel [Henry] is not

4

licensed to practice in federal court, therefore, [he] never intend[ed] on filing a federal claim." On January 17, 2006, the Honorable Ronald A. White granted Plaintiff's motion to remand Case No. CIV-05-451-WH to the District Court of Muskogee County and noted that "Plaintiff is the master of the claim and may avoid federal jurisdiction by exclusive reliance on state law." Following remand, the Muskogee County District Court transferred the case to the District Court of Craig County on June 28, 2006, pursuant to the doctrine of *forum non conveniens*. On February 1, 2007, Henry withdrew as Plaintiff's attorney after Plaintiff terminated Henry's services effective January 29, 2007.

On March 15, 2007, Plaintiff, through his current counsel, Damario Solomon-Simmons, filed the instant action while the state court action was still pending in the Craig County District Court. The Complaint filed in this Court against NEOEC, NERS, Express, and Gregory asserted federal jurisdiction under 28 U.S.C. § 1331 by virtue of a claim for racial discrimination under Title VII. In addition, Plaintiff asserted the same state law claims as those that were still pending in the state court action.[3] On June 18, 2007, Plaintiff dismissed the Craig County District Court action without prejudice.

**Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment if the evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[3] A virtually identical Amended Complaint was filed herein on March 28, 2007.

law." Because the material facts which relate to the judicial estoppel and statute of limitations arguments are not in dispute, the only question on summary judgment is whether NEOEC and NERS are entitled to judgment as a matter of law based on those undisputed facts.

**Judicial Estoppel**

NEOEC and NERS contend Plaintiff is judicially estopped from asserting his Title VII claim in this federal court action because of his earlier abandonment of any Title VII claim in Case No. CIV-05-451-WH.[4] In sum, NEOEC and NERS argue that because Plaintiff denied any intention of bringing a Title VII claim when he successfully secured a remand order in Case No. CIV-05-451-WH, the doctrine of judicial estoppel bars Plaintiff from asserting a Title VII claim in this subsequently filed action.[5] The Court disagrees.

---

[4] In support of their judicial estoppel argument, NEOEC and NERS have adopted the arguments and authorities cited by Express in its summary judgment motion. See Express Motion for Summary Judgment (Doc. # 101, p. 7-10).

[5] Plaintiff filed a Charge of Discrimination against NEOEC and NERS (collectively identified as "REC Electric Coop") with the Equal Employment Opportunity Commission ("EEOC") on May 16, 2004, and the EEOC issued a Dismissal and Notice of Rights letter on March 11, 2005. Whether on its own or at the request of Plaintiff, the EEOC apparently reconsidered its decision and reopened Plaintiff's charge against REC Electric Coop. On December 14, 2006, the EEOC issued a "for cause" determination and issued a second Dismissal and Notice of Rights letter. Plaintiff filed the instant action on March 15, 2007. Given this pre-suit history, no issue is raised by NEOEC and NERS concerning the proper exhaustion of administrative remedies by Plaintiff with respect to the Title VII claim. See 42 U.S.C. § 2000e-5(f)(1)(aggrieved individual must file civil action within 90 days of receipt of formal right-to-sue letter from EEOC); see also Nordell v. Heckler, 749 F.2d 47, 48-50 (D.C. Cir. 1984)(a request for reconsideration of EEOC's final action on employment

In general terms, judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n. 8 (2000). "Its purpose is 'to protect the integrity of the judicial process,' . . . , by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' . . . ." New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)(citations omitted). As an equitable doctrine, application of judicial estoppel rests within the sound discretion of the court. Id. at 750.

The doctrine of judicial estoppel was first applied by the United States Court of Appeals for the Tenth Circuit in Johnson v. Lindon City Corporation, 405 F.3d 1065 (10th Cir. 2005). In Johnson, the Tenth Circuit summarized the doctrine as follows:

> "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"

Id. at 1069 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). Relying on the United States Supreme Court's discussion of the doctrine in New Hampshire, the Tenth Circuit recognized a three-part test to be used in evaluating whether or not to apply the doctrine in a particular situation:

> "First, [whether] a party's later position [was] 'clearly inconsistent' with its earlier position." . . . Second,

---

discrimination charge filed within the statutory time frame for filing of civil action extends the time for bringing suit under Title VII).

7

> "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled.'" . . . Third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Johnson, 405 F.3d at 1069 (citations omitted). While this test is not necessarily all-inclusive of the factors a court should evaluate in making its decision about the application of the doctrine of judicial estoppel, see New Hampshire, 532 U.S. at 750 (three factors typically inform the court's decision, but these factors are not "inflexible prerequisites or an exhaustive formula", but rather, "[a]dditional considerations may inform the doctrine's application in specific factual contexts"), the threshold requirement for the application of the doctrine is an inconsistent or contrary position taken by a party in a subsequent litigation. Moreover, this inconsistent or contrary position "must generally be one of fact rather than of law or legal theory." Johnson, 405 F.3d at 1069.

The argument by NEOEC and NERS for the application of judicial estoppel is fundamentally flawed because Plaintiff has never taken an inconsistent or contrary factual position with respect to the litigation history of this case. When seeking to remand Case No. CIV-05-451-WH back to the state district court in November 2005, Plaintiff argued remand was appropriate because he had not asserted any federal claim for employment discrimination in his state court petition. The rationale for not filing a Title VII claim was, at least in part, the fact that Henry was not licensed to practice in federal court. In his response brief, Plaintiff also contends he did not include a Title VII claim in the state litigation or concede its inclusion in the removed action because the EEOC did

8

not issue the second and final Dismissal and Notice of Rights until December 14, 2006. Consequently, he argues any Title VII claim filed before December 14, 2006, would have been subject to dismissal for failure to exhaust administrative remedies.

Under these circumstances, judicial estoppel does not bar Plaintiff from asserting a Title VII claim in this action. Plaintiff has clearly not taken any inconsistent or contrary factual position. Rather, the position at issue involves the selection of the legal theory or theories to pursue in seeking redress for the alleged violations occurring in Plaintiff's workplace. When he argued for a remand of Case No. CIV-05-451-WH, Plaintiff did not disavow the existence of facts supporting a Title VII claim. He merely acknowledged that he chose not to assert a Title VII claim in the state court action. Valid reasons existed for this choice, whether it be his lawyer's lack of a federal court license or the lack of exhaustion of administrative remedies as to NEOEC and NERS. Neither reason, however, suggests an inconsistent factual position. The decision to forego filing a Title VII claim in state court at a time Plaintiff's then-counsel was not licensed to practice in federal court or when exhaustion of administrative remedies had not been accomplished is clearly not inconsistent with the later filing of such claim in this federal court action. Thus, the Court finds no "clearly inconsistent" position upon which to base the application of the doctrine of judicial estoppel. Plaintiff is not barred from proceeding with his Title VII claim.

**<u>Statute of Limitations - State Law Claims</u>**

NEOEC and NERS contend Plaintiff's state law claims are barred by the two-year statute of limitations period applicable to

Plaintiff's state law claims because the filing of this federal court action on March 15, 2007, was more than two years from February 13, 2004, the date Plaintiff last performed work for NEOEC and NERS.[6] In addition, NEOEC and NERS contend Oklahoma's "savings statute", 12 O.S. § 100, does not operate to save Plaintiff's claims from the bar of the limitations period. The Court rejects these arguments and finds Plaintiff's state law claims to be timely filed by operation of section 100.

Oklahoma's "savings statute" provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the reversal or failure although the time limit commencing the action shall have expired before the new action is filed

12 O.S. § 100. "Under this statute, '[w]here a timely commenced action is dismissed without prejudice on plaintiff's motion before trial on the merits but after the statute of limitations has run, the plaintiff may commence a new action within a year after such dismissal.'" Brown v. Hartshorne Public School Dist. No. 1, 926 F.2d 959, 962 (10th Cir. 1991)(quoting In the Matter of Speake, 743 P.2d 648, 650 n. 3 (Okla. 1987). This statute is remedial in

---

[6] NEOEC and NERS contend all three state law claims – intentional infliction of severe emotional distress, negligent hiring, retention and supervision, and wrongful discharge in violation Oklahoma public policy – are subject to the two-year limitations period of 12 O.S. § 95(3). Plaintiff does not contest the applicability of this two-year period to his state law claims. Likewise, NEOEC and NERS do not contest that all three claims were timely filed in state court.

nature and "should be liberally construed to afford litigants a hearing on the merits of their actions." Pinson v. Robertson, 172 P.2d 625, 627 (Okla. 1943). The construction given by the Court should comport with the legislative intent of extending the limitations period one year from a dismissal otherwise than on the merits. Holder v. Rising Bros., Inc., 619 P.2d 1278, 1279 (Okla. 1980).

It is the position of NEOEC and NERS that a failure otherwise than on the merits, i.e. a dismissal without prejudice, must occur before the one-year period of section 100 is implicated. As applied to the facts of this case, NEOEC and NERS contend section 100 was not implicated when Plaintiff filed this action on March 15, 2007, because that filing occurred while the state court action was still pending. In essence, NEOEC and NERS contend the one-year savings period of section 100 could not begin to run until the state court action was dismissed without prejudice on June 18, 2007, and that Plaintiff's premature filing of the state law claims on March 15, 2007, is not entitled to the benefit of the one-year savings period of section 100. NEOEC and NERS seek judgment as a matter of law on the state law claims because they are time-barred. In the alternative, they contend such claims should be dismissed as untimely brought in *this* court, leaving Plaintiff the option of refiling the claims in *state* court before the one-year period of section 100 expires on June 18, 2008.

The construction of the statute taken by NEOEC and NERS is at odds with the legislative intent behind section 100. It is a hyper-technical construction which elevates form over substance. Such construction fails to afford Plaintiff the one-year extension intended by the legislature and it denies Plaintiff a hearing on the merits of his state law claims. Admittedly, Plaintiff's March

11

15, 2007, filing of the instant action was before the June 18, 2007, dismissal without prejudice of the state court action. Technically, the one-year period of section 100 for refiling did not begin to run until June 18, 2007. Under section 100, Plaintiff has one year from June 18, 2007, to refile those claims in order to survive a time-bar challenge. The fact that Plaintiff was premature in filing this action before the dismissal without prejudice in state court should not operate to preclude Plaintiff from taking advantage of section 100. To hold otherwise would be contrary to the expressed legislative intent. No prejudice attaches to allowing Plaintiff to proceed with his state law claims. Plaintiff is clearly still within the one-year period running from June 18, 2007, and NEOEC and NERS have been on notice and defended against the state law claims from as early as September 29, 2005, when Plaintiff filed his Amended Petition specifically outlining the state law claims. Consequently, the Court finds that Plaintiff's state law claims are saved by operation of section 100.

**Conclusion**

Based on the foregoing reasons, the Court finds Plaintiff's Title VII claim is not barred by the doctrine of judicial estoppel and that Plaintiff's state law claims for intentional infliction of severe emotional distress, negligent hiring, retention and supervision, and wrongful discharge in violation Oklahoma public policy are saved by operation of Oklahoma's "savings statute," 12 O.S. § 100. The motion for summary judgment filed by NEOEC and NERS is therefore denied.

It is so ordered this 25th day of October, 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma